FILED
IN OPEN COURT

JUL 2 3 2025

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT LOUIS RUBIN,<br><br>Defendant. | Case No. 1:25-cr-211 |

## STATEMENT OF FACTS

1. The United States and the defendant, ROBERT LOUIS RUBIN, agree that at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

2. Company 1 was an Alabama corporation, with headquarters in Herndon, Virginia, engaged in the business of providing protective security officers at federal workplaces in numerous states. From at least 2010 to 2023, Individual 1 was the president of Company 1. From at least 2010 to 2020, defendant ROBERT LOUIS RUBIN served as Vice-President of Business Development for Company 1. From January 2020 to December 2022, defendant ROBERT LOUIS RUBIN served as the Vice-President of Business Development and a Managing Director for Company 1's parent corporation.

3. Cyrus Strategies was a consulting firm based in Bethesda, Maryland owned by defendant ROBERT LOUIS RUBIN.

4. By no later than 2015, Individual 1 and his daughter (Individual 2) established MCKHU, Inc. Around that time, Individual 1 informed defendant ROBERT LOUIS RUBIN that his daughter (Individual 2) would sign all papers on behalf of MCKHU, Inc. Two of Individual 1's sons, Individual 3 and Individual 4, both Company 1 employees, would thereafter operate a

1

side business under the name, MCKHU, Inc.

5.  Company 3 was a Maryland corporation engaged in the business of providing protective security officers at federal workplaces. Individual 5, sister-in-law of defendant ROBERT LOUIS RUBIN, was the founder, incorporator, and an initial director of Company 3. From its incorporation to the present, Individual 5 served as Company 3's chief executive officer and president.

6.  When Company 3 was formed in 2014, Individual 1 directed that the ownership be divided between Individual 5 at 51 percent, Cyrus Strategies (defendant ROBERT LOUIS RUBIN) at 24.5 percent, and MCKHU (Individual 1, Individual 3 and Individual 4) at 24.5 percent. The ownership was drawn in the above manner by Individual 1 so that it appeared that Individual 5 owned a majority of Company 3.

7.  Despite the legal ownership arrangement, Individual 1 had an unwritten, under-the-table agreement with defendant ROBERT LOUIS RUBIN, Individual 3, Individual 4, and Individual 5 that the proceeds of Company 3 would be divided one-third for Individual 5, one third for Cyrus Strategies (defendant ROBERT LOUIS RUBIN), and one-third for MCKHU (Individual 1, Individual 3 and Individual 4).

8.  Beginning at least as early as 2014, and continuing at least through April 1, 2023, Individual 1, acting on behalf of Company 1, agreed to award lucrative subcontracts to Company 3 to supply private security guards at various federal installations. The proceeds from those awards from Company 1 to Company 3 to provide security guards totaled millions of dollars. Individual 1 made those awards knowing that Cyrus Strategies (defendant ROBERT LOUIS RUBIN) and MCKHU (Individual 1, Individual 3 and Individual 4) both controlled Company 3 and received the majority of its proceeds, and that Individual 5 was Rubin's sister-in-law. Defendant ROBERT LOUIS RUBIN and Individual 5 agreed to accept those subcontracts, and their proceeds, on behalf

of Company 3.

9.     For example, on or about October 3, 2014, Individual 1, on behalf of Company 1, and Individual 5, on behalf of Company 3, executed a subcontract whereby Company 3 would supply protective security officers for Company 1 as the prime contractor with United States Department of Homeland Security, Federal Protective Service at federal workplaces in New England.

10.    Similarly, on or about October 1, 2018, Individual 1 on behalf of Company 1, and Individual 5, on behalf of Company 3, executed a subcontract whereby Company 3 as subcontractor would supply protective security officers for Company 1 as the prime contractor with United States Department of Homeland Security, Federal Protective Service at ten federal workplaces in the District of Columbia.

11.    Similarly, on or about October 1, 2019, Individual 1 on behalf of Company 1, and Individual 5, on behalf of Company 3, executed a subcontract whereby Company 3 as subcontractor would supply protective security officers for Company 1 as the prime contractor with United States Department of Homeland Security, Federal Protective Service at federal workplaces in Southern Virginia.

12.    From its inception, Individual 1 would exercise significant hidden influence over many of Company 3's decisions and operations. For example, Individual 1 instructed Company 3 as to which contracts it should bid and not to bid against Company 1. Individual 1 also instructed Company 3 over which vendors and consultants it would hire and monitored Company 3's finances. In addition, because Individual 5 was a novice in the security business, she relied heavily on defendant ROBERT LOUIS RUBIN, Individual 1, Individual 3 and Individual 4 to manage all aspects of Company 3's operations.

13.    All the above parties were aware that they were to conceal that Individual 1,

defendant ROBERT LOUIS RUBIN, Individual 3, and Individual 4 were controlling Company 3.

14.     In December 2015, Individual 1 directed that Cyrus Strategies and MCKHU would sell their 24.5 percent shares in Company 3 back to Individual 5 for $100 each and thereafter assist in Company 3's operation pursuant to consulting agreements. The separate consulting agreements dated December 31, 2015, executed between Company 3 and Cyrus Strategies and MCHKU provided for a $7,500 per month retainer and $225 per hour fee for hours in addition to the retainer. The parties never observed those agreements: defendant ROBERT LOUIS RUBIN, Individual 3, and Individual 4 never billed on a per hour basis for Company 3 and never invoiced Company 3 for the time they spent assisting it operate.

15.     Rather than operate within the terms of the consulting agreements, defendant ROBERT LOUIS RUBIN, Individual 1, Individual 3 and Individual 4 continued to abide by the unwritten, under-the-table agreement that Individual 5, Cyrus Strategies, and MCKHU would each receive one-third of the proceeds from Company 3. Each would receive a monthly payment from Company 3 depending on its cash on hand, as well as a year-end reconciliation. Those payments could range from $0 to more than $50,000 at the discretion of defendant ROBERT LOUIS RUBIN, Individual 1, Individual 3, Individual 4 and Individual 5.

16.     In exchange for his hidden 33 percent interest in Company 3's proceeds, defendant ROBERT LOUIS RUBIN assisted in obtaining and performing lucrative subcontracts on behalf of Company 3 as vice-president of business development to Company 1. Defendant ROBERT LOUIS RUBIN's intercession on behalf of Company 3 resulted in Company 3 and Company 3's affiliated entities being awarded more than $100 million in contract proceeds. The payment of 33 percent of Company 3's profits to defendant ROBERT LOUIS RUBIN was, in part, for the purpose of improperly obtaining and rewarding favorable treatment from Company 1 in connection with the awarding of subcontracts from Company 1.

17. In exchange for his sons' 33 percent interest of Company 3, Individual 1 directed lucrative subcontracts on behalf of Company 1 as its president to Company 3. Individual 1 also agreed to support Company 3 and ensure that it would be permitted to bid with Company 1 as a woman-owned contractor. Individual 1's intercession of behalf of Company 3 resulted in Company 3 and its affiliated entities being awarded more than $100 million in contract proceeds. The payment of 33 percent of Company 3's profits to Individual 1's family was, in part, for the purpose of improperly obtaining and rewarding favorable treatment from Company 1 and Individual 1 in connection with the awarding of subcontracts from Company 1.

### Company 4

18. From January 2008 to October 2023, Individual 6 served as Company 1's Vice-President of Operations. Sometime in 2016, Individual 6 agreed with Individual 1 to form a corporation which would act as a subcontractor to Company 1 but appear as a woman-owned or disabled veteran-owned business. In June 2016, Individual 6 formed Company 4 in Delaware with "Michelle Grisgby" as its owner, director, and president.

19. The person identified as Michelle Grigsby in Company 4's incorporation documents has a different legal name. That person is Individual 7. Individual 7 is Individual 6's wife. The pseudonym Michelle Grigsby was derived by joining Individual 7's middle name with her maiden surname. When conducting business on behalf of Company 4, Individual 7 used the name Michelle Grigsby and an email address for Michelle Grigsby. In addition, the incorporation documents for Company 4 provide its address as 4905 Del Ray Avenue, Suite 402, Bethesda, Maryland 20814—the same address as Company 3.

20. On January 1, 2017, Individual 7 transferred ownership of Company 4 to Individual 8, her father. Individual 8 was a retired Navy veteran who unbeknownst to defendant ROBERT LOUIS RUBIN was living in a retirement home in Maryland. Defendant ROBERT LOUIS RUBIN

was not aware of Individual 8 managing or performing any work for Company 4.  On October 1, 2018, Individual 8 sold his entire interest in Company 4 to Individual 9.  Individual 7, using the name Michelle Grigsby, remained the president of Company 4 throughout these ownership changes.

21. From the inception of Company 4, Individual 1 had an unwritten, under-the-table agreement with the parties below that, despite the ownership interests on paper, the proceeds of Company 4 would be divided as follows:

> Individual 6 and Individual 7: 40 percent;
> Individual 1, Individual 3, and Individual 4: 40 percent
> Defendant ROBERT LOUIS RUBIN: 20 percent.

22. The straw ownership of Individual 7, and then Individual 8, permitted Company 1 to receive credit in subcontract plans for federal contracts for using Company 4 as, alternatively, a woman-owned and service-disabled veteran-owned subcontractor.

23. Beginning at least as early as 2016, and continuing at least through April 1, 2023, Individual 1, acting on behalf of Company 1, agreed to award lucrative subcontracts to supply private security guards at various federal installations in the United States to Company 4.  The proceeds from those awards subcontracts from Company 1 to Company 4 to provide security guards totaled millions of dollars.  Individual 1 made those awards knowing that Individual 6 was an officer and employee of Company 1, and that Individual 7, posing as Michelle Grigsby, was his wife.  Individual 6 and Individual 7 agreed to accept those subcontracts, and their proceeds, on behalf of Company 4.

24. For example, on or about January 1, 2019, Individual 1, on behalf of Company 1, and Individual 7, on behalf of Company 4, executed a subcontract whereby Company 4 would supply protective security officers for Company 1 as the prime contractor with United States Department of Homeland Security, Federal Protective Service at federal workplaces in Illinois.

25.     Similarly, on or about February 1, 2019, Individual 1, on behalf of Company 1, and Individual 7, on behalf of Company 4, executed a subcontract whereby Company 4 would supply protective security officers for Company 1 as the prime contractor with United States Department of Homeland Security, Federal Protective Service at federal workplaces in Ohio.

26.     From its inception, Individual 1 would exercise significant hidden influence over many of Company 4's decisions and operations. For example, Individual 1 directed Company 4 what vendors to use and settled disputes over division of Company 4's proceeds. In addition, because Individual 7 was a novice in the security business, she relied heavily on Individual 3, Individual 4, and Individual 6 to operate Company 4 including payroll, accounting, and taxes. Individual 7 similarly relied on defendant ROBERT LOUIS RUBIN to help support business development.

27.     In exchange for Individual 1, Individual 3, and Individual 4's hidden 40 percent interest in Company 4's proceeds, Individual 1 directed lucrative subcontracts on behalf of Company 1 as its president to Company 4. Individual 1 also agreed to support Company 4 and ensure that it would be permitted to support Company 1 as a woman-owned or service-disabled veteran-owned subcontractor. Individual 1's secret intercession of behalf of Company 4 resulted in Company 4 being awarded contract proceeds as a subcontractor to Company 1. The payment of 40 percent of Company 4 profits to Individual 1's family was, in part, for the purpose of improperly obtaining and rewarding favorable treatment from Company 1 and Individual 1 in connection with the awarding of subcontracts from Company 1.

28.     In exchange for his hidden 20 percent interest and control of Company 4, defendant ROBERT LOUIS RUBIN assisted in obtaining and performing subcontracts on behalf of Company 4 as vice-president of business development to Company 1. Defendant ROBERT LOUIS RUBIN's secret intercession of behalf of Company 4 resulted in Company 4 being awarded

contract proceeds as a subcontractor to Company 1. The payment of 20 percent of Company 4's profits to defendant ROBERT LOUIS RUBIN was, in part, for the purpose of improperly obtaining and rewarding favorable treatment from Company 1 in connection with the awarding of subcontracts from Company 1.

29. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

30. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

Erik S. Siebert
United States Attorney

Date: 7/23/25

By: _____
Drew Bradylyons
Kathleen E. Robeson
Assistant United States Attorneys
Vincent Falvo, Jr.
Trial Attorney for the Department of Justice's
Violent Crime and Racketeering Section

8

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, ROBERT LOUIS RUBIN, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
ROBERT LOUIS RUBIN

I am ROBERT LOUIS RUBIN's defense attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Lee Rubin, Esq.
Kelly Kramer, Esq.
Attorney for ROBERT LOUIS RUBIN

9